# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## JAMAR ED-WAE SCOTT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-419      Seth Norman, Judge**

---

**No. M2013-01724-CCA-R3-PC - Filed June 9, 2014**

---

The petitioner, Jamar Ed-Wae Scott, appeals the denial of his petition for post-conviction relief, which challenged his Davidson County Criminal Court jury convictions of first degree murder and attempted robbery. Discerning no error, we affirm the denial of relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Kara Everett, Nashville, Tennessee, for the appellant, Jamar Ed-Wae Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Davidson County Criminal Court jury convicted the petitioner of two counts of felony murder, two counts of second degree murder, and two counts of attempted robbery related to the shooting deaths of Gregory Miles and Andrea McFee on September 11, 2005. On direct appeal, this court affirmed the convictions and accompanying sentence of life plus eight years' imprisonment. *See State v. Jamar Ed-Wae Scott*, No. M2010-00809-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, Dec. 15, 2011). The evidence adduced at the petitioner's trial, as summarized by this court on direct appeal, established that on September 10, 2005, the petitioner's girlfriend, Francine Goss, announced plans to commit a robbery to obtain money and that she selected the victims when she went to the store with a friend during the early morning hours of September 11, 2005. *See id.*, slip op. at 4. Ms. Goss

brought the victims to her home, where five children lay sleeping in a back bedroom. One of the children testified that she had seen the petitioner inside Ms. Goss's residence with a gun in his waistband. At some point, "a 'shootout' occurred in Goss's home," *id.*, slip op. at 6, and the victims died as a result of multiple gunshot wounds sustained during the shootout, *see id.*, slip op. at 7. Telephone records established that Ms. Goss and the petitioner spoke to each other 28 times between 2:32 a.m. and 4:38 a.m. Other evidence established that the shootings occurred after 4:00 a.m. The petitioner admitted to two of his friends that he had shot two people, *see id.*, slip op. at 2, and threatened the life of a potential State witness, *see id.*, slip op. at 4.

The petitioner did not file an application for permission to appeal to the supreme court but instead filed a timely petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel at trial and on appeal. The petitioner claimed that his trial counsel performed deficiently by failing to secure the services of an investigator, by failing to interview potential witnesses prior to trial or present those witnesses at trial, by failing to protect the petitioner's right to a speedy trial, by failing to interview the potential witnesses for the State, by failing to obtain discovery from the State, by failing to make numerous objections at trial, by failing to adequately inform the petitioner of his right to testify at trial, and by failing to adequately communicate with the petitioner.[1] The petitioner also claimed that his trial counsel performed deficiently during jury selection and during opening statement. The petitioner claimed that his appellate counsel performed deficiently by failing to raise a number of issues on appeal. Following the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, adding claims that counsel performed deficiently by failing to adequately prepare for trial and apprise themselves of the applicable law and by failing to file a motion to suppress the petitioner's statement to police and that the evidence was insufficient to support his convictions.

At the April 2013 evidentiary hearing, trial counsel testified that she undertook representation of the petitioner just before the preliminary hearing and that her representation continued through the filing of one motion for new trial. She said that she obtained the services of an investigator to investigate the case and interview all of the potential witnesses. Additionally, she secured the assistance of another attorney to act as co-counsel. Trial counsel recalled that the petitioner's first trial ended in a hung jury. Trial counsel said that she met with the petitioner numerous times prior to the first trial and "multiple times" before the second trial. She said that she shared discovery materials with the petitioner and that the two discussed the elements of the offenses, trial strategy, and potential witnesses and

_____

[1]The petitioner also claimed, inexplicably, that misinformation received from trial counsel led the petitioner "to plea[d] guilty to an offense . . . to which [the p]etitioner was not guilty; and cause [the p]etitioner to plea[d] outside of his recognized range."

defenses. She recalled the petitioner's providing information regarding a potential alibi witness but said that the potential witness "would not confirm that [the petitioner] had been there."

Trial counsel testified that she discussed with the petitioner the circumstances surrounding his giving a statement to police, but she did not recall any issue with the statement that would have prompted her to file a motion to suppress the statement. She said that the statement did not contain any inculpatory information. Trial counsel said that she discussed with the petitioner the benefits and costs of his choosing to testify at trial and that "it was ultimately his decision."

Appellate counsel testified that she was appointed to represent the petitioner following the filing of his motion for new trial. She said that she argued the motion for new trial and then represented the petitioner on direct appeal to this court. She recalled that she chose to present on direct appeal only those issues she believed to have merit rather than repeating all of the issues raised in the motion for new trial. After this court affirmed the convictions and sentence, appellate counsel forwarded a copy of this court's opinion to the petitioner. The two then spoke over the telephone, and appellate counsel told the petitioner that she believed obtaining relief from the supreme court would be "a longshot" and that such an appeal would be time-consuming. She said she told the petitioner that she believed the issues he wanted to raise would best be raised in a petition for post-conviction relief and advised him of the time limit for filing. She recalled that based upon their discussion, the petitioner initially agreed to forego an appeal to the supreme court. Later, however, he contacted her and expressed a desire to file an application for permission to appeal. She did not say, however, whether the time for filing the application had passed.

The petitioner testified that trial counsel visited with him while he was incarcerated to discuss the case, that the investigator also visited with him, and that trial counsel explained the legal elements of the offenses with which he was charged. Nevertheless, he claimed that he "didn't have a real clear understanding" of the case "because like I was coming about a certain way and . . . my response to certain stuff wasn't right." The petitioner said that he explained to trial counsel that he was in custody when he provided a statement to the police about the shooting. He said that he wanted counsel to seek suppression of the statement.

The petitioner testified that he asked trial counsel to interview Alyssa Polk, whom he described as "a female friend" with whom he "just was cool," because she could provide alibi testimony. He said that, as far as he knew, trial counsel did not interview Ms. Polk.

The petitioner testified that he wanted appellate counsel to file an application for permission to appeal to the supreme court and that he never told appellate counsel otherwise. He admitted that appellate counsel told him that the likelihood of success on an appeal to the supreme court was slim and that he would be better served by filing a petition for post-conviction relief. He said that he did not understand from their conversation that appellate counsel was not going to file an application for permission to appeal. He denied receiving any notice that counsel intended to withdraw from representing him.

During cross-examination, the petitioner admitted that he did not provide any inculpatory information in his statement to the police and that his statement was not admitted into evidence at trial. He nevertheless claimed that "73 percent of [the] trial was based about [his] statement but it was just edited from [his] statement." He then said, "Everyone avoided my statement." The petitioner claimed that counsel's failure to seek suppression of his statement had a chilling effect on his right to testify because he feared that he would be impeached with the contents of the statement should he testify in a manner inconsistent with the statement. He conceded, however, that he participated in a full *Momon* colloquy and that he told the trial court, under oath, that he had personally made the decision not to testify.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In a written order, the court denied relief, finding that the petitioner had failed to establish his claims by clear and convincing evidence. The post-conviction court accredited the testimony of both trial and appellate counsel that each had fully explained the law and procedure applicable to his case to the petitioner. The court concluded that trial counsel "zealously cross-examined witnesses and researched every potential defense to the charges." The court opined that "trial counsel represented the [p]etitioner with the utmost competence and zeal at both trials in this matter." The post-conviction court also concluded that appellate counsel's advice that he would be better served by filing a petition for post-conviction relief than by filing an application for permission to appeal did not divest the petitioner of his right to file an application for permission to appeal. The court accredited appellate counsel's testimony that the petitioner agreed to forego second-tier appellate review.

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that his trial counsel performed deficiently by failing to file a motion to suppress his statement to the police and by pressuring him into waiving his right to testify at trial and that his appellate counsel performed deficiently by misinforming the petitioner regarding appellate procedure and by failing to file an application for permission to appeal. The State contends that the petitioner failed to establish any of his claims by clear and convincing evidence.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the decision of the post-conviction court denying post-conviction relief because the petitioner failed to establish any of his claims by clear and convincing evidence.

*Motion to Suppress*

The petitioner contends that his trial counsel performed deficiently by failing to seek suppression of the statement he provided to the police following his arrest. The

petitioner concedes that the statement was not admitted at trial but claims that "the *potential* for it to be introduced has an indelible impact on all other evidentiary aspects of the trial strategy." In our view, however, the petitioner waived any claim for relief related to this statement by failing to introduce it at the evidentiary hearing. Additionally, the petitioner failed to cite any authority in support of his assertion that trial counsel's failure to seek suppression of a statement that was never admitted at trial resulted in prejudice to his case, and we find none.[2] The petitioner failed to establish this claim for post-conviciton relief.

*Right to Testify*

The petitioner claims that his trial counsel "pressured him" to waive his right to testify at trial. The petitioner's own testimony at the evidentiary hearing, however, belies his claim. Although the petitioner testified that he initially wanted to testify at trial, he said that by the conclusion of the State's proof, he no longer wanted to take the stand because he did not believe that his testimony would make sense without the context that would have been provided had his counsel asked certain questions of the State's witnesses. The petitioner also acknowledged telling the trial court during the *Momon* colloquy that he did not want to testify and that he had made the decision of his own volition. He said, "I did say that I didn't want to testify because, like, at the end there was nothing I could have done because all of the witnesses had already been put up there. . . . I couldn't get up there and testify to nothing." Absolutely no evidence supports the petitioner's claim that trial counsel pressured him into waiving his right to testify or his more audacious claim that his *Momon* "waiver was not intelligently given." Accordingly, this claim for relief fails.

*Application for Permission to Appeal*

The petitioner claims that appellate counsel not only failed to explain his right to file an application for permission to appeal to the supreme court following this court's ruling on direct appeal but also that appellate counsel "in fact *misinformed*" him "regarding appellate procedure." The record simply does not support this claim. Appellate counsel's accredited testimony established that she provided the petitioner with a copy of this court's opinion on direct appeal and then spoke with him by telephone regarding his right to file an application for permission to appeal. She said that she told the petitioner that although she believed his issues had some merit, obtaining relief via second-tier appellate review was not likely and that the procedure was time consuming. She candidly admitted that she told the

---

[2]The single case cited by the petitioner, *Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996), does not, in any way, support his claim. That case addresses a claim of ineffective assistance of counsel in the context of a guilty plea and does not contain any issue with regard to motions to suppress, the potential admission of evidence, or trial strategy.

petitioner that she believed he would be better served by pursuing post-conviction relief. The post-conviction court accredited counsel's testimony that the petitioner agreed to forego filing an application for permission to appeal. Although it appears that the petitioner later changed his mind, it is not clear from the record whether his change of heart occurred before or after the time for filing an application for permission to appeal had passed. Importantly, no proof suggested that appellate counsel abandoned the petitioner following this court's opinion. Instead, the record establishes that counsel fully explained the process to the petitioner along with his chances of success and that the two arrived at a decision to forego further review.[3] The petitioner is not entitled to relief on this issue.

Because the petitioner failed to establish his claims by clear and convincing evidence, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[3]Reference was made at the evidentiary hearing and in the post-conviction court's order to the change in Tennessee Rule of Appellate Procedure 11 regarding the 60-day time limit for filing an application for permission to appeal. Previously, this time limit had not been subject to enlargement. Effective July 1, 2012, the rule was amended to provide that the 60-day time limit could be waived in criminal cases in the interest of justice.